[No. 7,754.—In Bank.]

August 30, 1881.

## S. NEWCOMB ET AL. *v.* JAMES B. TISDALE ET AL.

DESTRUCTION OF PROPERTY UNDER URGENT NECESSITY.—In an action to recover damages for the destruction of crops, etc., caused by defendants cutting a levee or embankment across Wilkin's Slough, the defendants justified under an alleged urgent necessity to save life and property from destruction; and the evidence tended to show that such necessity existed, under the stress of which they acted.   The Court, in effect, instructed the jury, that if the levee or embankment was constructed in pursuance of plans reported to the Board of Supervisors of Colusa County, etc., then the act of the defendants was unlawful, and they were responsible in damages for any injury sustained by the plaintiffs.

*Held:* This instruction took from the jury the defense set up, and in effect directed them to disregard it; for this error, judgment reversed. (MYRICK and McKEE, JJ., dissenting.)

APPEAL from a judgment for the plaintiff, and from an order denying a new trial, in the Superior Court of the County of Colusa.   HATCH, J.

*J. C. Ball* and *Jo Hamilton*, for Appellants.

The law of necessity invoked by the appellants was conclusive, and the Court below erred in disregarding it.   (2 Kent's Com. 338, 339; 1 Hilliard on Torts, 97; *Surocco* v. *Geary*, 3 Cal. 73, 74; *Russell* v. *The Mayor etc.*, 2 Denio, 474; *The Mayor etc.* v. *Lord*, 17 Wend. 285; S. C., 18 id. 129, 130; *American Print Works* v. *Lawrence*, 1 Zab. 257, 258; *Hale* v. *Lawrence*, 1 id. 729, 730.)

*A. L. & T. J. Hart*, for Respondents,

THORNTON, J.:

In this action, which was brought to recover damages for

the destruction of crops, etc., caused by defendants cutting a levee or embankment across Wilkin's Slough, the defendants justified under an urgent necessity to save life and property from destruction. The evidence tended to show that such necessity existed, under the stress of which they acted. The Court instructed the jury if the levee or embankment across Wilkin's Slough, the cutting of which is complained of, was constructed in pursuance of plans reported to the Board of Supervisors of Colusa County of Reclamation District No. 108, then the defendants had no right to cut the levee without the consent of the owners thereof, and if they did so cut it, their act was an unlawful act, for which they were responsible in damages for any injury sustained by plaintiffs.

This instruction took from the jury the defense set up, and in effect directed them to disregard it.

This was repeated in the direction given by the learned Judge to the jury when he read to them Request vii. of defendants.

For this error, the judgment and order are reversed, and cause remanded for a new trial.

Ross, McKinstry, and Sharpstein, JJ., concurred.

Myrick, J., dissenting:

This action was brought to recover damages for the wrongful and unlawful cutting of an embankment of earth on the west side of the Sacramento River, in Colusa County, whereby water was caused to flow from said river and flood and inundate the lands of plaintiffs and destroy plaintiffs' growing crops of grain. The plaintiffs resided and had growing crops on the west side, and the defendants with their families resided on the east side of the river.

The defendants in their answer averred that at times the said river is subject to great floods and overflows; that when the river becomes full of water the bed of the river is insufficient to hold the body of water; that along the river there are several natural outlets for the drainage of the river, which was designed by nature, and which do and did carry off the surplus water, and thereby ease the volume of water flowing in the stream; that on the westerly side of the river

one of these natural outlets was called Wilkin's Slough, which
with other outlets in their natural state act as outlets for the
surplus water and tend to ease the flow at times of high
water; that except for the relief from said natural outlets the
river at times of excessive high water is liable and does break
over its banks, floods the whole country for miles in extent,
and does great damage to the property of persons on the
easterly side of the river, and washes away their houses and
endangers the lives of defendants and others; that before and
on the twenty-second of December, 1879, from excessive floods
from above, the river became and was full of water to its
utmost capacity; that it was still rising; that its condition
threatened, and public calamity was thereby rendered immi-
nent; that it became and was necessary, in order to arrest
such public calamity, and to save the lives of persons residing
on the easterly side of the river, that said natural outlets
should be rendered free from obstruction; that the defend-
ants and many others consulted together, and it was resolved
to be and it was necessary, in order to prevent public calamity
and to save the lives and property aforesaid, that the ob-
structions in said outlets should be removed; that said Wil-
kin's Slough had become and was filled up and obstructed so
that it was unable to receive said surplus water, or to act as
a natural outlet; that the defendants, in order to prevent the
threatened public calamity, proceeded to remove the obstruc-
tions from said slough, in order to ease and prevent the flow
of the water over said country as aforesaid—all of which acts
were necessary and proper, and done from stress of necessity,
and to save life and property as aforesaid.

There is no averment that the other outlets referred to
were filled up or obstructed; there is no distinct averment
that the said other outlets were insufficient to carry off the
surplus water; neither is there any averment that the removal
of the obstructions in Wilkin's Slough accomplished the re-
sult desired, or eased the flow, or saved life or property.

The case was tried before a jury, and a verdict of $1,000
in favor of plaintiffs returned; for which amount, with costs,
judgment was rendered. Defendants' motion for a new trial
was denied, and the appeal was taken.

The testimony taken on the trial tended to show that Wilkin's Slough was originally, and now is when not stopped or filled up, a large and important outlet on the westerly side of the river, carrying, during times of high water, from one tenth to one sixth of the entire water of the river; that Reclamation District No. 108, in furtherance, as they claimed, of a ·scheme for the reclamation of the lands within the district, built a large levee on the west bank of the river, extending from Knight's Landing, in Yolo County, to Sycamore Slough, in Colusa County, and that the line of said levee crossed Wilkin's Slough near its source; that the company filled up Wilkin's Slough near its source, and such fill was the levee at that place; that the levee across this slough was not on lands inside of or belonging to the district; that on the twenty-second of December, 1879, the defendants, all living on the east side of the river, crossed the river and cut the levee at the source of Wilkin's Slough, by removing the earth which formed the embankment in the slough; that the effect of cutting the levee was to turn the waters of the river into the slough, which then filled up to its full capacity and then ran out of the slough over the lands occupied by plaintiffs, and did the damage, if any, complained of.

The plaintiffs also proved that subsequent to the erection of the levee across Wilkin's Slough, a levee was constructed by defendants and others along the east bank of the river, extending several miles above and below the slough, which said levee crossed at their source two small sloughs which had formerly served as outlets to the waters of the Sacramento River. The defendants' testimony tended to prove that in former times, before the Wilkin's Slough was stopped up by the levee of the Reclamation Company, their lands were high and dry above high water; that the effect of the stopping of Wilkin's Slough by the levee was to raise the waters from three to four feet on the easterly side of the river, and to threaten to overflow the lands of the defendants from two to three feet, thereby threatening great damage to defendants; that to protect themselves as best they could, they had built levees, at their own expense, from six to seven feet high; that for several days before December 22, 1879, the Sacramento River at Wilkin's Slough was at a very high state of

water—on the twenty-first higher than ever known before; that the weather was unsettled and threatening heavy rain; that there was every appearance of heavy rains in the upper part of the Sacramento; that on Monday, the twenty-second, the waters had receded about from three to seven inches, caused by a break in the levee in Steiner Bend, but on the morning of the twenty-second, at Colusa, forty-five miles above Wilkin's Slough, on the river, a higher stage of water was passing down than ever known before.

Even granting, which I do not, that the defendants would have been justified in cutting the levee, and thus removing the obstruction, so that waters of the river during a flood could flow through the Wilkin's Slough, yet, in the case as presented by the transcript, they were not justified in their acts. The transcript states that the evidence tended to prove "that the effect of cutting the levee was to turn the waters of the river into the slough, which then filled up to its full capacity, and then *ran out of the slough over the lands occupied by plaintiffs*," and did the damage complained of, and there is no conflicting evidence as to that fact. It thus appears that the plaintiffs' lands and crops were outside of and higher than the slough, and that the water, in consequence of the cutting, ran into the slough in such volume as to be unable to find an outlet, and therefore submerged plaintiffs' lands. There is no evidence that the lands of plaintiffs owed the servitude to have the waters of the river flow *over them.* Necessity, to save their own property, would not have justified defendants in this destruction of plaintiffs' property. Necessity, to save life, does not appear; because, if the defendants had the means of crossing a turbulent river in a great flood, to the side where life and property were then secure, they could doubtless have removed their families as well.

The defendants urge the proposition, that the law authorizing the construction of the levee, and its construction by the Reclamation District, were unconstitutional and void, in that defendants' property could not be taken without compensation, and that flooding their lands, even occasionally, is taking their property. Conceding that if the land had been flooded it was a taking within the meaning of the Constitution, it is sufficient to say that it was *not* flooded. On both

sides of the river levees had been constructed; that on the west by the Reclamation District, that on the east by the defendants. The levee on the west had the effect to raise the waters of the river three to four feet, and to threaten to overflow defendants' lands from two to three feet; and defendants had constructed their levee six to seven feet high, which had, so far, afforded protection. Some water had run over the levee in places, but how much, or with what result, does not appear. Defendants had also stopped up two smaller sloughs, which had formerly served as outlets for the waters of the river. Besides, at the time the defendants cut the levee the waters of the river were subsiding; had already receded three to seven inches.

Assuming, under the facts as presented and the law applicable thereto, that the Reclamation District was properly formed and the levee legally constructed and maintained, I do not see that the defendants were justified in cutting the levee, and in causing the injury complained of.

I do not think it necessary to pass upon the instruction given to the jury "that the flooding," etc. (vi., p. 17, Transcript), nor upon the instructions asked for by the defendants as to what is a nuisance and their right to remove it; the matters therein contained were not applicable to this case. Even if it be conceded that the levee was a nuisance, the defendants had no right to cut it and thus cause the waters to flow into the slough in such volume as to exceed the capacity of the slough and overflow its banks.

McKEE, J., concurred in the foregoing dissenting opinion.